**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| AUTUMN WILLIAMS | * | |
| Plaintiff, | * | |
| v. | * | Civil No.: BPG-21-1732 |
| BTST SERVICES, LLC | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF No. 10). Currently pending are defendant's Motion to Dismiss the Complaint ("Motion to Dismiss") (ECF No. 18), plaintiff's Response in Opposition to Defendant's Motion to Dismiss (ECF No. 22), plaintiff's Motion for Permission to File Amended Complaint ("Motion to Amend") (ECF No. 24), defendant's Response in Opposition to Plaintiff's Motion for Permission to File an Amended Complaint ("Opposition to Plaintiff's Motion to Amend") (ECF No. 25), and plaintiff's Response to Opposition to Motion to Amend (ECF No. 26).  No hearing is deemed necessary.  Loc. R. 105.6. For the reasons discussed herein, defendant's Motion to Dismiss (ECF No. 18) is DENIED, and plaintiff's Motion to Amend (ECF No. 24) is GRANTED in part and DENIED in part.

## I.    BACKGROUND

Plaintiff Autumn Williams ("plaintiff") alleges the following facts in her proposed Amended Complaint.  (ECF No. 24-1).  On May 9, 2016, plaintiff began working for defendant BTST Services, LLC ("defendant" or "BTST"), which "provides various services for citizens of

Baltimore City." (Id. at 1-2, ¶¶ 2, 5). Prior to her employment with defendant, plaintiff notified defendant's executive director, Jada McCray ("Ms. McCray"), of her disabilities, including depression, attention deficit hyperactivity disorder ("ADHD"), dyslexia, and dysgraphia, and they discussed plaintiff's need for accommodations. (Id. at 1, ¶ 3). Ms. McCray told plaintiff that such accommodations "would not be a problem." (Id.) On July 17, 2017, plaintiff was assigned a new supervisor, Shante Jones ("Ms. Jones"). (Id. at 2, ¶ 7). Thereafter, plaintiff did not receive her paycheck for the period from July 15, 2017, to August 2017. (Id. ¶ 8). Plaintiff subsequently complained about her pay, and during a meeting with Ms. Jones, plaintiff received a written warning due to late submission of notes and, as a result, was placed on probation. (Id. ¶ 9). During her meeting with Ms. Jones, plaintiff "did not state her specific disability . . . [but] she did inquire about the accommodation" previously agreed upon by plaintiff and Ms. McCray. (Id.) Ms. Jones "ignored and dismissed Plaintiff's inquiry regarding her accommodation." (Id.)

In the ensuing months, plaintiff continued to have issues with her pay, was refused additional clients, and received two more written warnings due to her alleged late submission of notes. (Id. at 3-4, ¶¶ 11-20). Meanwhile, plaintiff continued to complain about her payroll and clientele issues. (Id. ¶¶ 15, 18-19). Plaintiff also repeated her request for an accommodation "each time Ms. Jones charged her with late submissions." (Id. at 6). Plaintiff was terminated on December 31, 2018. (Id. at 4, ¶ 22). Plaintiff alleges that defendant's basis for her termination (i.e., late submission of notes) was pretext, and "the real basis of [her] termination traces back to her request that [Ms. Jones] uphold the accommodation given by [Ms. McCray] and [plaintiff] speaking out about and investigating payroll irregularities." (Id.)

Plaintiff alleges that she received a Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") on April 16, 2021. (ECF No. 1 at 6). On July

12, 2021, plaintiff filed a form Complaint ("Complaint") against defendant in this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (ECF No. 1-1).  In the Complaint, plaintiff alleges discriminatory conduct including termination of employment, failure to accommodate, and retaliation, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.  (ECF No. 1 at 4).  Defendant reads the Complaint to allege three claims under the ADA, including disability discrimination, retaliation, and failure to accommodate.  (ECF No. 18-1 at 1-2).  Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 18).  In addition, plaintiff moves for permission to file an amended complaint ("proposed Amended Complaint").  (ECF No. 24-1).  In her proposed Amended Complaint, plaintiff alleges three counts: "Count One – Violation of the American[s] with Disabilities Act," "Count Two – Retaliation," and "Count Three – Emotional distress and pain and suffering."  (ECF No. 24-1 at 5-6).  Plaintiff seeks damages in the amount of $525,000.00.  (Id. at 7).

## II.   <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When ruling on such a motion, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[] all reasonable factual inferences from those facts in the plaintiff's favor."  Id. at 244.  Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Rather, "a

complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal citation and quotation marks omitted).  A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements. Walters, 684 F.3d at 439.  Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In addition, pursuant to Federal Rule of Civil Procedure 15(a)(2), a party is permitted to amend his pleadings with the written consent of the opposing party or by leave of the court.  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires."  Leave to amend a pleading should be denied, however, "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).  A proposed amendment is futile if it "fails to satisfy the requirements of the federal rules" or, in other words, could not survive a motion to dismiss. Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)).

## III.   DISCUSSION

Defendant moves to dismiss plaintiff's Complaint, asserting that plaintiff fails to plead: (1) a disability discrimination claim under the ADA, (2) a retaliation claim under the ADA, (3) a failure to accommodate claim under the ADA, and (4) a plausible theory of relief.  (ECF No. 18-1 at 3-10).  Defendant also argues that plaintiff's Motion to Amend should be denied on grounds of futility because the proposed Amended Complaint still fails to establish sufficient facts to

adequately plead claims for disability discrimination, retaliation, and failure to accommodate under the ADA.  (ECF No. 25 at 4-9).  The court, therefore, will address defendant's arguments in both its Motion to Dismiss (ECF No. 18) and Opposition to Plaintiff's Motion to Amend (ECF No. 25) as they relate to the facts alleged in plaintiff's proposed Amended Complaint (ECF No. 24-1).[1]

## A.  Retaliation Under the ADA

First, defendant contends that plaintiff fails to plead a retaliation claim under the ADA. (ECF No. 18-1 at 5-6).  Specifically, defendant asserts that plaintiff fails to plead that she engaged in protected activity.  (Id.)  To establish a prima facie claim of retaliation under the ADA, plaintiff must allege: (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that a causal link exists between the protected activity and the adverse action.  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 350 (4th Cir. 2011).  While plaintiff cites Title VII of the Civil Rights Act of 1964 in Count Two of her proposed Amended Complaint regarding

---

[1] As a preliminary matter, the court notes that defendant argues in its Motion to Dismiss and Opposition to Plaintiff's Motion to Amend that plaintiff fails to establish sufficient facts to adequately plead a disability discrimination claim under the ADA.  (ECF Nos. 18-1 at 3-5, 25 at 4-6).  This argument is moot, however, in light of plaintiff's proposed Amended Complaint, in which plaintiff does not plead a disability discrimination claim under the ADA.  Rather, Count One of the proposed Amended Complaint alleges that while plaintiff notified defendant of her disability, defendant denied plaintiff an accommodation in violation of the ADA.  (ECF No. 24-1 at 5).  Such allegations clearly assert a claim for failure to accommodate, not a claim for disability discrimination.  See Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (noting the elements of a failure to accommodate claim under the ADA include a showing of disability, notice of the disability to the employer, that with a reasonable accommodation plaintiff could perform the essential functions of the position, and that the employer refused such accommodations); see also Fierce v. Burwell, 101 F. Supp. 3d 543, 552 (D. Md. 2015) (noting the elements of a disability discrimination claim require plaintiff to show that she had a disability, was a qualified individual, and suffered an adverse action because of her disability).  In addition, Count Two of the proposed Amended Complaint alleges a retaliation claim and Count Three alleges a claim for "emotional distress and pain and suffering." (ECF No. 24-1 at 5-6).  Accordingly, because plaintiff's proposed Amended Complaint does not assert a claim for disability discrimination under the ADA, defendant's Motion to Dismiss on this point is moot.

the type of activity that constitutes protected activity, plaintiff also references her request for a reasonable accommodation for her disabilities, which implicates the ADA.  (ECF No. 24-1 at 5-6).  Notwithstanding plaintiff's reference to Title VII, the court nevertheless construes Count Two of the proposed Amended Complaint to plead a retaliation claim under the ADA.  Indeed, retaliation claims brought under either the ADA or Title VII are analyzed under the same standard. See Laird v. Fairfax Cnty., Va., 978 F.3d 887, 893 n.5 (4th Cir. 2020); see also Wilson v. Montgomery Cnty. Coll. Board of Trustees, No. 17-cv-2784-PWG, 2021 WL 1102341, *4 (D. Md. March 23, 2021) (noting that an ADA retaliation claim is assessed through the same lens as a Title VII retaliation claim).

In this case, plaintiff clearly pleads sufficient facts to satisfy the first two elements of a prima facie claim of retaliation under the ADA.  With respect to the first element, a request for an accommodation due to disability constitutes protected activity.  See Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001) (noting that "the first protected activity capable of grounding an ADA retaliation claim is [plaintiff's] request for reasonable accommodation").  Here, plaintiff alleges that she asked Ms. Jones to "uphold the accommodation given by [Ms. McCray]." (ECF No. 24-1 at 4, ¶ 22).  With respect to the second element, termination constitutes an adverse employment action.  See Jacobs v. N.C. Admin. Office of the Cts., 780 F.3d 562, 577 (4th Cir. 2015) (holding that defendant took adverse employment action in the context of an ADA retaliation claim when it terminated plaintiff).  Here, plaintiff alleges that she was terminated by defendant on December 31, 2018.  (ECF No. 24-1 at 4, ¶ 22).  Plaintiff, therefore, alleges sufficient facts to satisfy the first two elements of her retaliation claim.

The third element of an ADA retaliation claim requires plaintiff to show that a causal link exists between plaintiff's protected activity (i.e., her request for an accommodation) and

defendant's adverse action (i.e., plaintiff's termination).  See A Soc'y Without a Name, 655 F.3d at 350.  Establishing a causal relationship at the prima facie stage "is not an onerous burden." Strothers v. City of Laurel, Md., No. 17-1237, 895 F.3d 317, 335 (4th Cir. 2018) (citing Burgess v. Bowen, 466 Fed. App'x 272, 282 (4th Cir. 2012) (noting that "very little evidence" of causation is required to establish a prima facie case of retaliation).  A plaintiff may establish prima facie causation simply by showing that "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity."  Id. at 335-36.

In this case, plaintiff alleges that she engaged in protected activity when she asked Ms. Jones about her accommodation during their meeting sometime between August and November 2017.[2]  (ECF No. 24-1 at 2, ¶ 9).  Plaintiff also alleges that she "repeated her requests [for an accommodation] each time that Ms. Jones charged her with late submissions."  (Id. at 6).  Given these claims, plaintiff has adequately alleged that defendant "either understood or should have understood" that plaintiff was engaged in protected activity.  Strothers, 895 F.3d at 335-36.

Further, it should be noted that "temporal proximity is sufficient to establish a causal connection at the *prima facie* stage."  Id. at 336-37 (emphasis in original).  In cases "[w]here a plaintiff rests his case on temporal proximity alone, the temporal proximity must be very

---

[2] While plaintiff does not allege specifically when her initial meeting with Ms. Jones occurred— during which plaintiff allegedly first notified Ms. Jones of her need for an accommodation—it appears based on the facts alleged in plaintiff's proposed Amended Complaint that the meeting took place sometime between August and November 2017.  Plaintiff alleges that she first met with Ms. Jones after she complained about her missing paycheck for the period from July 15, 2017 to August 2017.  (ECF No. 24-1 at 2, ¶¶ 8-9).  Plaintiff also claims that she contacted the payroll department and Ms. Jones between November 28, 2017, and November 30, 2017, because she did not receive a second paycheck.  (Id. at 3, ¶ 11).  Plaintiff's initial meeting with Ms. Jones, therefore, must have occurred sometime in August 2017 at the earliest or in November 2017 at the latest, just before plaintiff contacted the payroll department and Ms. Jones about her second missing paycheck.

close." Penley v. McDowell Cnty. Board of Educ., 876 F.3d 646, 656 (4th Cir. 2017).  Here, plaintiff claims in her proposed Amended Complaint that she informed Ms. McCray about her disabilities, including her depression, ADHD, dyslexia, and dysgraphia, on May 6, 2016, prior to plaintiff's employment with defendant. (ECF No. 24-1 at 5, ¶ 1).  Plaintiff claims that Ms. McCray told her that an accommodation for her disability "would not be a problem. (Id. at 1, ¶ 3).  In addition, plaintiff alleges that during a meeting with Ms. Jones sometime between August and November 2017, she "did inquire about the accommodation that McCray had agreed upon," but that Ms. Jones ignored and dismissed plaintiff's inquiry.  (Id. at 2, ¶ 9).  Plaintiff also alleges that she repeated her request for an accommodation "each time Ms. Jones charged her with late submissions." (Id. at 6).  Therefore, plaintiff alleges that she made at least three requests to Ms. Jones for an accommodation, including during plaintiff's meeting with Ms. Jones that occurred sometime between August and November 2017 (ECF No. 24-1 at 2, ¶ 9), in mid-December 2017 when plaintiff received her second warning (id. at 3, ¶ 12), and on July 31, 2018, when plaintiff received her third warning (id. at 4, ¶ 20).  Given plaintiff's claim that she was terminated by defendant on December 31, 2018, therefore, and drawing all reasonable factual inferences in plaintiff's favor, there was a five-month gap in between when plaintiff last made defendant aware of her protected activity and when defendant took adverse action against plaintiff.  A five-month gap, depending on the precise circumstances, may be adequate to establish such temporal proximity between plaintiff's protected activity and her termination.  Compare Pascual v. Lowe's Home Ctrs. Inc., 193 Fed. App'x 229, 233–34 (4th Cir. 2006) (three to four months not close enough for temporal proximity) and King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003) (two-and-a-half months not close enough for temporal proximity), with Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (four-month span close enough for temporal proximity) and

Jenkins v. Gaylord Entertainment Co., 840 F. Supp. 2d 873, 881 (D. Md. 2012) (two-day span close enough for temporal proximity).

In the absence of close temporal proximity, however, a plaintiff may allege other evidence of retaliatory animus to plead causation.  See Wilson v. City of Gaithersburg, 121 F. Supp. 3d 478, 485 (D. Md. 2015).  Here, after plaintiff allegedly asked Ms. Jones for an accommodation sometime in between August and November 2017, plaintiff claims that "she did not get paid as expected."  (ECF No. 24-1 at 3, ¶ 11).  Further, after plaintiff was charged a second time with late submission of notes in mid-December 2017, and after allegedly repeating her request for an accommodation at that time, Ms. Jones allegedly refused to assign plaintiff additional clients, thus jeopardizing plaintiff's ability to obtain her clinical license.  (Id. at 3, ¶¶ 12-14).  Plaintiff also claims that she "continued to have issues with her pay."  (Id. at 4, ¶ 16).  Plaintiff, therefore, alleges sufficient evidence of retaliatory animus to plead causation.  See Lettieri v. Equant Inc., 478 F.3d 640, 650-51 (4th Cir. 2007) (holding that plaintiff presented sufficient evidence of retaliatory animus when, after plaintiff reported discrimination to her human resources department, defendant stripped plaintiff of significant job responsibilities and reduced her supervisory responsibilities).

Defendant further argues that plaintiff's retaliation claim must be dismissed because plaintiff failed to plead but-for causation.  (ECF No. 25 at 4-6).  Specifically, defendant argues that plaintiff's proposed Amended Complaint alleges a mixed motive based on plaintiff's claim that she was terminated because of her request for an accommodation and her complaints about pay irregularities.  (Id. at 5-6).  "[T]o demonstrate a causal connection, a plaintiff must establish 'but-for' causation."  Miller v. Md. Dep't of Nat. Res., 813 Fed. Appx. 869, 877 (4th Cir. 2020); see Staley v. Gruenberg, 575 Fed. Appx. 153, 155-56 (4th Cir. 2014) (applying but-for causation in an ADA retaliation case).  A plaintiff, however, need not establish but-for causation at the prima facie

stage. Strothers, 895 F.3d at 335 ("Purported victims of retaliation do not have to show at the *prima facie* stage that their protected activities were but-for causes of the adverse action.") (emphasis in original); see Prosa v. Austin, ELH-20-3015, 2022 WL 394465, at *32 (D. Md. Feb. 8, 2022) (applying the same standard in the context of a motion to dismiss); see also Miller, 813 Fed. Appx. at 878 (noting that, at the pleading stage, a plaintiff need only allege facts supporting a "reasonable inference" of causation).

Here, plaintiff alleges in her proposed Amended Complaint that "the real basis of [her] termination traces back to her request that [Ms. Jones] uphold the accommodation given by [Ms. McCray] and [plaintiff] speaking out about and investigating payroll irregularities." (ECF No. 24-1 at 4, ¶ 22). Plaintiff, however, alleges sufficient facts to support the conclusion that her complaints about payroll irregularities were connected to her request for an accommodation. For example, plaintiff alleges that defendant "insisted that they were not receiving pay for Plaintiff's billed hours because of [her] 'late notes,'" and that she complained to defendant's executive staff when she discovered that defendant had actually been paid for plaintiff's billed hours. (ECF No. 24-1 at 4, ¶ 18-19). Plaintiff also alleges that "whenever [she] questioned the issues regarding being paid for hours that the agency billed for her services, she was charged with late note submission" (id. ¶ 21), even though plaintiff requested an accommodation that would enable her to submit her notes on time. Plaintiff, therefore, alleges sufficient facts at the motion to dismiss stage to establish a causal link between her protected activity and defendant's adverse action.[3]

---

[3] Defendant cites Davis v. W. Carolina Univ., 695 Fed. Appx. 686, 688 (4th Cir. 2017) and Staley, 575 Fed. Appx. at 156 for the proposition that plaintiff must allege but-for causation for her retaliation claim. (ECF No. 25 at 5). Both cases, however, were decided at the summary judgment stage. In this case, as discussed above, plaintiff has alleged sufficient facts at the motion to dismiss stage to support a "reasonable inference" of causation. Miller, 813 Fed. Appx. at 878.

Accordingly, defendant's Motion to Dismiss is denied as to plaintiff's ADA retaliation claim, and plaintiff's Motion to Amend is granted as to Count Two of the proposed Amended Complaint.

### B.  Failure to Accommodate Under the ADA

Defendant argues that plaintiff fails to plead that she was denied a reasonable accommodation.  (ECF No. 18-1 at 7).  Specifically, defendant asserts that plaintiff fails to plead any element of her claim.  (Id.)  To establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability;[4] (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations."  Rhoads, 257 F.3d at 387 n.11 (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).

In this case, plaintiff sufficiently pleads all elements of a prima facie claim of failure to accommodate under the ADA.  With respect to the first element, a disability under the ADA is "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102.  Plaintiff claims in her proposed Amended Complaint that her disabilities include depression, ADHD, dyslexia, and dysgraphia.  (ECF No. 24-1 at 1 ¶ 3).  In addition, she alleges that she takes medications and requires ongoing care for her disabilities.  (Id. at 4, ¶ 17).  Plaintiff also suggests that, as a result of her disabilities, she requires additional time to submit her notes.  (Id. at 5, ¶ 3).  Plaintiff, therefore, has alleged a physical or mental impairment (i.e., ADHD, depression, dyslexia, and dysgraphia) that substantially limits her ability to perform a major life activity (i.e., work).  See Wilson v. City of Gaithersburg, 121 F. Supp. 3d 478, 484 (4th Cir. 2015)

---

[4] Here, any knowledge that Ms. Jones had of plaintiff's disability is imputed to defendant. Alejandro v. ST Micro Electronics, Inc., 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) ("A supervisor's knowledge of an employee's disability is imputed to the employer . . . .").

(holding that plaintiff adequately plead a disability within the meaning of the ADA when he alleged that his ADHD required medication and prevented him from working under certain circumstances).

As to the second element, defendant argues that plaintiff has not adequately alleged that she told Ms. Jones of a disability.  (ECF No. 25 at 7).  "The burden to provide notice is not an onerous one: the employee does not need to mention the ADA or use the phrase 'reasonable accommodation,' but need only inform the employer of *both* the disability and the employee's need for accommodations for that disability."  Schneider v. Giant of Md., LLC, 389 Fed. Appx. 263, 270 (4th Cir. 2010) (citing E.E.O.C. v. Fed. Express Corp., 513 F. 3d 360, 369 (4th Cir. 2008)).  Vague or conclusory statements, however, "revealing an unspecified incapacity are not sufficient to put an employer on notice . . . ."  Id. (citing Huppenbauer v. May Dep't Stores, Co., No. 95-1032, 1996 WL 607087, at *6 (4th Cir. 1996).  In her proposed Amended Complaint, plaintiff alleges that, during a meeting with Ms. Jones in which plaintiff received a written warning and was placed on probation due to late submission of notes, plaintiff asked Ms. Jones about the accommodation previously given to her by Ms. McCray.  (ECF No. 24-1 at 2, ¶ 9).  In addition, plaintiff claims that she repeated her request to uphold the accommodation each time Ms. Jones charged her with late submissions.  (Id. at 6).  Defendant contends that plaintiff's claim should be dismissed because plaintiff "clearly states that she **did not** tell [Ms. Jones] of her disability and that she asked for an accommodation without disclosing the disability."  (ECF No. 25 at 8) (emphasis in original).  Although plaintiff alleges that she "did not state her specific disability" to Ms. Jones (ECF No. 24-1 at 2, ¶ 9), plaintiff nevertheless alleges sufficient facts to state a plausible claim that Ms. Jones was aware that plaintiff's request for an accommodation was based on plaintiff's disability.  Specifically, plaintiff told Ms. Jones that her accommodation had been

approved by Ms. McCray, defendant's executive director.  (ECF No. 24-1 at 2, ¶ 9).  Plaintiff and Ms. Jones also discussed the accommodation in the context of conversations about plaintiff's difficulty submitting notes on time.  (Id. at 6).  Drawing all reasonable factual inferences in plaintiff's favor, it is plausible that, based on the facts alleged by plaintiff in her proposed Amended Complaint, Ms. Jones was aware that plaintiff had a disability and needed an accommodation for that disability.[5]

The third element requires plaintiff to allege that, with a reasonable accommodation, she could perform the essential functions of her position.  Rhoads, 257 F.3d at 387 n.11.  A reasonable accommodation may include "job restructuring, part-time or modified work schedules . . . and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9).  A reasonable accommodation "must be effective (i.e., it must address the job-related difficulties presented by the employee's disability)."  Wehner v. Best Buy Stores, L.P., No. MJG-15-2163, 2017 WL 952685, at *5 (quoting Fleetwood v. Harford Sys. Inc., 380 F. Supp. 2d 688, 699 (D. Md. 2005)).  Essential functions are the fundamental job duties of the employment position.  Fleetwood, 380 F. Supp. 2d at 689 (citing 29 C.F.R. § 1630.2(n)(1)).

Here, while plaintiff does not explicitly note her job title, she alleges in her proposed Amended Complaint that she performed social work for defendant, including the provision of services to clients, and she was required to submit notes as part of her job.  (ECF No. 24-1 at 1-3, ¶¶ 1-4, 9, 13).  In addition, although plaintiff began working for defendant on May 9, 2016, she

_____

[5] In addition, the court is mindful that plaintiff is pro se.  While plaintiff's pro se status "does not absolve [her] from pleading a plausible claim," her "complaint is to be construed liberally."  Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 2d 310, 314 (D. Md. 2014).  Accordingly, the court concludes that plaintiff has adequately plead a cause of action and should be afforded the opportunity to conduct discovery to support her claim that Ms. Jones was on notice that plaintiff had a disability and requested an accommodation for that disability.

does not allege any issues performing her job and suggests that she was able to perform her duties with the accommodation given to her by Ms. McCray until at least August 2017, when Ms. Jones allegedly denied plaintiff's request for an accommodation.  (Id. at 2, ¶ 4-9).  Drawing all reasonable factual inferences in plaintiff's favor, the court concludes that plaintiff adequately pleads that she could perform the essential functions of her position with a reasonable accommodation.  Compare E.E.O.C. v. Advanced Home Care, Inc., 305 F. Supp. 3d 672, 676 (M.D.N.C. 2018) (holding that plaintiff adequately alleged the third element of her failure to accommodate claim when plaintiff requested the accommodation of telework, stated that part of her job required her to be on the phone, and claimed that she could perform her job with the accommodation, although plaintiff did not allege any information as to the essential functions of her job), with Rubino v. New Acton Mobile Industries, LLC, 44 F. Supp. 3d 616, 623 (D. Md. 2014) (holding that plaintiff failed to plead the third element when he alleged no facts indicating the kind of work he performed and otherwise simply recited the elements of the cause of action).

Finally, with respect to the fourth element of her failure to accommodate claim, that her employer refused her requested accommodation, plaintiff alleges in her proposed Amended Complaint that Ms. Jones "ignored and dismissed Plaintiff's inquiry regarding her accommodation."  (ECF No. 24-1 at 2, ¶ 9).  Plaintiff also asserts that defendant, through Ms. Jones, denied plaintiff an accommodation "by continuing to charge her with and penalize her for late submission."  (Id. at 5, ¶ 3).  Plaintiff, therefore, adequately pleads that defendant denied her an accommodation.

In sum, the court concludes that plaintiff's proposed Amended Complaint states a plausible claim of failure to accommodate under the ADA.  Accordingly, defendant's Motion to Dismiss plaintiff's failure to accommodate claim is denied as moot in light of the proposed Amended

Complaint, and plaintiff's Motion to Amend is granted as to Count One of the proposed Amended Complaint.

### C. **Relief**

Defendant moves to dismiss plaintiff's request for damages.  (ECF No. 18-1 at 9-10).  In her Complaint, plaintiff requests $10,000 in medical costs, $500,000 for emotional distress, pain, and suffering, and $15,000 in legal fees "for false charges."  (ECF No. 1 at 7).  In her proposed Amended Complaint, plaintiff asserts, in Count Three, a claim specifically for "emotional distress and pain and suffering," alleging that she has been in ongoing intensive treatment since her termination from BTST and that defendant's conduct has "permanently affected [her] ability to function in every area of her life."  (ECF No. 24-1 at 6).  There is no separate cause of action, however, for a claim of pain and suffering.  Hodge v. College of Southern Md., 121 F. Supp. 3d 486, 496 (D. Md. 2015) (dismissing plaintiff's separate cause of action for pain and suffering when plaintiff included the "cause of action" merely to describe her injuries and damages).  Count Three of plaintiff's proposed Amended Complaint, therefore, is dismissed.

In addition, in her proposed Amended Complaint, plaintiff requests damages in the amount of $525,000 for "loss of earnings, emotional distress and pain and suffering."  (Id. at 7).  While plaintiff may not assert pain and suffering damages as a separate cause of action, she may still recover compensatory damages based on Count One of her proposed Amended Complaint, which alleges a failure to accommodate under the ADA.  See E.E.O.C. v. Fed. Express Corp., 513 F.3d 360, 370 n.7 (4th Cir. 2008) (permitting compensatory damages based on a failure to accommodate claim under the ADA).  Under the ADA, compensatory damages are available for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  Cline v. Wal-Mart Stores, Inc., 144 F. 3d 294, 304 (4th Cir.

1998) (quoting 42 U.S.C. § 1981a(b)(3)).  The sum of compensatory damages is limited, however,

depending on the number of individuals employed by defendant, to $300,000.  E.E.O.C. v. Fed.

Express Corp., 513 F.3d at 370 n.7 (citing § 1981(a)(b)(3)).

In this case, plaintiff requests $525,000 in compensatory damages.  (ECF No. 24-1 at 7).

As defendant notes, this amount is well beyond the ADA's statutory limit.[6]  (ECF No. 18-1 at 10).

Rule 12(b)(6), however, allows for the dismissal of *claims*, not requests for a remedy.  Charles v.

Front Royal Volunteer Fire and Rescue Dep't, Inc., 21 F. Supp. 3d 620, 629 (W.D. Va. 2014)

(emphasis added).  "A court therefore should not dismiss a complaint so long as it sets out facts

sufficient to support a reasonable inference that the plaintiff is entitled to any relief the court can

grant, even if that relief is not specifically requested."  Int'l Fidelity Ins. Co. v. Mahogany, Inc.,

No. JKB-11-1708, 2011 WL 3055251, at *2 n.1 (D. Md. June 25, 2011).  Here, plaintiff's request

for damages is not a separate claim, so defendant may not use Rule 12(b)(6) to dismiss the request.

(See ECF No. 24-1 at 7).  Moreover, while plaintiff does not specifically request an amount of

damages within the statutory limit of the ADA, she alleges sufficient facts, based on her failure to

accommodate claim, to support the inference that she is entitled to some amount of damages under

---

[6] The sum of compensatory damages "shall not exceed . . . (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000; (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."  42 U.S.C. § 1981a(b)(3); see E.E.O.C. v. Fed. Express Corp., 513 F.3d at 370 n.7 (applying § 1981a(b)(3) when plaintiff sought compensatory damages in the context of a failure to accommodate claim under the ADA).

Case 1:21-cv-01732-MJM   Document 27   Filed 03/22/22   Page 17 of 17

the ADA. Accordingly, defendant's Motion to Dismiss plaintiff's request for damages is denied, and plaintiff's Motion to Amend with respect to her request for damages is granted.

IV.    **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss (ECF No. 18) is denied, and plaintiff's Motion to Amend (ECF No. 24) is granted in part and denied in part. Specifically, defendant's Motion to Dismiss (ECF No. 18) is DENIED as to all issues. Plaintiff's Motion to Amend (ECF No. 24) is GRANTED as to Counts One and Two of the proposed Amended Complaint (i.e., plaintiff's failure to accommodate claim under the ADA and retaliation claim under the ADA) and plaintiff's request for damages, and DENIED as to Count Three of the proposed Amended Complaint (i.e., plaintiff's claim for emotional distress and pain and suffering). A separate order will be issued.


March 22, 2022                                    _____/s/_____
                                                 Beth P. Gesner
                                                 Chief United States Magistrate Judge